Overseers of the Poor of Montoursville Borough *versus* Overseers of the Poor of Fairfield Township.

| 112 | 99 |
| 154 | 360 |
| 112 | 99 |
| 20 SC | 273 |

1. To gain a settlement there must not only be a seisin, but a dwelling upon it for one whole year.

2. The settlement of a child, upon his arrival at. the age of twenty-one, is the settlement of his father; this is not the rule however, where the child is of unsound mind upon his arrival at his majority.

3. On a writ of error the Supreme Court cannot review the judgment of the court below on its merits, as on an appeal; only the decision on such points of evidence or of law as have been excepted to can be noticed.

4. A deed of a married woman in which her husband did not join is void, and passes no title to the grantee.

February 15th, 1886.   Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   GORDON, J., absent.

ERROR to the Court of Common Pleas, of *Lycoming county :* Of January Term 1886.

The facts appear sufficiently in the opinion of the court. CUMMIN, P. J.

The only question involved in this proceeding is the ascertainment of the last place of legal settlement of Susanna Gray, daughter of Joseph Gray.

May 14th, 1875, an order of relief for Susanna Gray was issued, at the instance of her mother, directed to the overseers of the poor of Fairfield township.   Whether any relief was furnished under this order does not appear in the evidence.

October 22d, 1882, another order of relief for Susanna Gray was issued, directed to the overseers of the poor of Fairfield township, which was served on them November 21st, 1882. They took charge of the pauper, and made some investigation as to her last place of legal settlement, and fearing they could not succeed in removing her, they made no effort to remove her.

May 2d, 1885, an order of removal was obtained, and same day the pauper was removed to the poor district of Montoursville borough, who accepted and now have charge of her.

May 4th, 1885, an appeal was taken by the overseers of the poor of Montoursville borough and was duly entered, and thus the question of the last place of legal settlement of this pauper came before the court.   Susanna Gray, the pauper, is the

[Overseers of Poor of Montoursville *v.* Overseers of Fairfield.]

daughter of Joseph Gray and Letitia, his wife, and was born in 1845. Her mind became deranged about the time she came of age, to wit, in 1866 or 1867. Letitia Gray died about June, 1882. Joseph Gray, her husband, died about March 28th, 1869. He was a pauper at the time of his death and was buried at the expense of the overseers of the borough of Montoursville.

Susanna, the pauper, lived with her parents until 1861, when her mother became possessed of a house and small lot of land in Fairfield township, after which time she resided with her mother until the time of her mother's death, shortly after which the last order of relief was taken out.

In 1854, Joseph Gray rented a house and lot from Jacob Fry for one year at a rental of twelve or fourteen dollars.

He moved with his family into the premises and resided there at least one whole year, and paid the rent in baskets, work and money. This house and lot afterwards became and is now within the limits of the borough of Montoursville. This fixes the place of legal settlement of Susanna Gray in 1854 in the borough of Montoursville.

It is claimed by the appellant that the pauper acquired a settlement in Fairfield township subsequently, by becoming seized of a freehold estate therein and dwelling thereon for one whole year. To sustain this claim, they have put in evidence, a mutilated assignment, indorsed on deed to Letitia Gray, her mother, for the lot of land above mentioned. This assignment is dated December 10th, 1867, and purports to convey the premises therein described to Susanna Gray. It is executed and acknowledged by Letitia Gray, whose husband was then living, but is without his signature or acknowledgment.

Without stopping to inquire whether this assignment was ever delivered to Susanna, or whether she ever resided on the premises as owner one whole year, [I am of opinion that no estate whatever passed to Susanna by this transfer, because Joseph Gray, the husband of Letitia, was then living and did not join in its execution. The assignment is not voidable, but absolutely void.] (Fifth assignment of error.)

"The deed of a *feme covert*, in which her husband does not join, is absolutely void, and cannot be validated by evidence of his assent, nor can she be estopped by the receipt of the consideration or any subsequent act of satisfaction. Nothing but a new deed, duly executed and acknowledged, could avail:" Buchanan *v.* Hazzard, 95 Pa. St., 240.

It is no longer possible to perfect this title, as both Letitia Gray and her husband, Joseph Gray, are dead, and the real estate in question has been sold under an order of the Or-

[Overseers of Poor of Montoursville v. Overseers of Fairfield.]

phans' Court as the property of Letitia Gray, for the payment of her debts.

The plaintiff presented the following points:

1. That the occupancy of premises by a person who does not lease the same and pay rent therefor, gives him no settlement. To gain a settlement, occupancy must be by virtue of a lease.

Answer. This point is affirmed.

2. That the occupancy of premises at the will of the lessee of the same, without any agreement for payment of rent, either with the original landlord or his lessee, and without the payment of any rent, will not give a settlement to such occupant, no matter how long such occupancy continues.

Answer. This point is affirmed.

3. That a mere occupancy of premises without any lease or agreement for payment of rent, and without any actual payment of rent, cannot be tacked to an occupancy of other premises held under a lease for the purpose of giving such occupant a settlement. The only occupancy which can be counted, is that which is by virtue of a lease reserving rent.

Answer. This point is affirmed.

4. The rule that the settlement of the parent is that of the child only applies until the latter acquires another.

Answer. This point is affirmed.

5. If the pauper in this case became seized in her own right of an estate of freehold in the township of Fairfield in 1866, and dwelt upon the same one whole year, then she did acquire a settlement in said township of Fairfield, and it does not matter where her father was last legally settled.

Answer this point is affirmed.

6. The legal effect of the assignment of Letitia Gray to the pauper was to give the latter an estate of freehold.

Answer. This point is negatived. (Sixth assignment of error.)

7. The execution and delivery of the assignment having been shown, and a long continued occupancy by the pauper of the premises thereafter, and there being nothing in the evidence to show when said assignment was tampered with and attempted to be obliterated, nor anything to show that the pauper, who was the grantee or assignee, assented to any cancellation of said assignment, such obliteration or attempted cancellation did not divest the title of the pauper.

Answer. This point being immaterial is negatived.

8. The burden of proof is on the township of Fairfield to show a settlement in Montoursville borough. If said township has failed to satisfy the court that the pauper has a settlement in said borough, then the order of removal must be

discharged.   Also if the court should be of opinion that at one time the pauper had derived a legal settlement in said borough through her father, but that since then she acquired another settlement in Fairfield township, then the order of removal must be discharged.

Answer. This point is affirmed.

9. The last place of the settlement of the pauper not being in Montoursville borough, the order of removal must be discharged.

Answer. This point is negatived.   (Second assignment of error.)

10. If Susanna Gray lived with Letitia Gray in Fairfield township, and did service for her one year or more by virtue of any understanding or agreement that she was to be paid for her services, either in money or property, then Susanna Gray acquired a settlement in said township.

Answer. That point is affirmed.

No other place of legal settlement being shown for this pauper since 1854, it follows that she was properly removed to the borough of Montoursville.

Order of removal confirmed with costs.   (First assignment of error.)

The overseers of the poor of Montoursville borough thereupon took this writ, assigning for error that portion of the general opinion included in brackets, the answer of the court to the plaintiff's sixth and ninth points, and the order and decree of the court confirming the order of removal of the pauper.

*J. J. Metzger (V. H. Metzger* with him), for the plaintiff in error.—Susanna Gray acquired a settlement in Fairfield township by derivation from her parents, who were seized of an estate of freehold in said township.

1. We claim that Letitia Gray and her husband, Joseph Gray, both acquired a legal settlement in Fairfield township, before their daughter, the pauper, attained the age of twenty-one years, and that she derived a settlement from them. "The settlement of the parent is that of the child until another is acquired." The Act of 1836 (Purdon's Digest, vol. 2, p. 1344), provides that "a settlement may be gained in any district, by any person who shall become seized of any freehold estate within such district and shall dwell upon the same one whole year."   That Letitia Gray, the mother of the pauper, was seized of an estate of freehold in Fairfield township and resided upon it with her daughter, the pauper, for upwards of twenty years is undisputed.

Joseph Gray, the father of the pauper, as the husband of

[Overseers of Poor of Montoursville v. Overseers of Fairfield.]

Letitia Gray, became, therefore, seized of an estate of freehold : Bank v. Stauffer, 10 Barr, 399.

. " Our Act of 1833 having dispensed with the birth of issue as a constituent of tenancy, by the curtesy the husband becomes tenant by the curtesy initiate by force of the marriage alone, and seized of a freehold in his own right" : Reese v. Waters, 4 W. & S., 145. The same principle was held by the court in Clark's Appeal, 29 P. F. S., 376, and in Harris v. The York Mutual Insurance Co., 14 Wr., 341.

2. The mother being, as we have seen, seized of an estate of freehold in said district of Fairfield in her own right, and dwelling upon it a number of years after her husband's death, unquestionably gave her a settlement in said district. " There is nothing to prevent her from acquiring a settlement by her own act after her husband's decease" : Mifflin Township v. Elizabeth, 6 Harris, 17. The settlement thus acquired would be communicated to her children in the same manner and under the same circumstances that the father's settlement could be communicated to them. " It is the headship of the family which gives the settlement of the father to his children " : Burrell Township v. Pittsburgh Guardians of the Poor, 12 P. F. S., 472.

The pauper was in the same condition as an idiot from infancy. In such case, it is held in Shippen v. Gaines, 5 Harris, 38, the settlement follows that of the father. By parity of reasoning, the settlement follows that of the mother where she acquires a settlement after her husband's death. If the infancy had not sufficiently terminated to enable the pauper to acquire a settlement before becoming insane, the same reasons exist for her acquiring a derivative settlement as well after her majority as before. The court therefore should have found that Susanna Gray had a settlement in Fairfield township : Overseers of Washington v. Overseers of Beaver, 3 W. & S., 548.

3. Where a married woman is deserted by her husband she may, by virtue of the Act of May 4th, 1855, execute a deed for her property without the joinder of her husband, and without having previously obtained a decree declaring her a *feme sole* trader under the 4th section of said Act : Black v. Tricker, 9 P. F. S., 13 ; Elias *et al. v.* McDaniel, 14 Norris, 472. The court below held this assignment void on the ground that it was executed by a married woman without the joinder of her husband. This is true as a general rule of law, but is not applicable to a case where such married woman has been deserted by her husband.

*J. F. Strieby*, for defendant in error.—The court below found

as a fact that Joseph Gray, the father of the pauper, had a legal settlement in Montoursville borough in 1854. This fact will not be reviewed in a court of error: Lower Augusta *v.* Selinsgrove, 64 Pa. St., 168.

Appellants' second assignment of error is that the court erred in not finding as requested in appellants' ninth point, which is—" The last place of settlement of the pauper not being in Montoursville borough the order of renewal must be discharged." This is not an exception to any point of evidence or of law. After the court below concluded from the evidence that Montoursville borough was the last place of legal settlement of the pauper, the court could not affirm appellants' ninth point. The refusal to affirm appellants' ninth point resulted from the conclusion of the court below which cannot be examined in a court of error, and hence appellants' second assignment of error need not be further noticed.

Appellants' fourth assignment of error is that the learned court erred in not affirming appellants' sixth point—" The legal effect of the assignment of Letitia Gray to the pauper was to give the latter an estate of freehold." The court below held that this assignment was void because it was executed by Letitia Gray alone while her husband, Joseph Gray, was in full life. Appellants admit the assignment was executed only by a *feme covert*, but seek to sustain it on the ground that Joseph Gray had deserted his wife before the assignment was executed. But of this there is not the slightest evidence. And in Tingles' Estate, 39 Leg. Int.; 209, it was held, that where the deed of a married woman, in which her husband does not join, is sought to be sustained on the ground of his desertion, the burden of proving it rests upon those claiming under such deed.

It is undoubtedly true that Letitia Gray, wife of Joseph Gray, gained a legal settlement in Fairfield township one year after her husband's decease. It is also true that such settlement would be communicated to any infant children she might have had at that time, and possibly to all her children who were not emancipated before that time. Her husband died in 1869. The pauper was born in 1845, and therefore above the age of 21 at the time of her father's death. If the pauper had been emancipated any time before her father's death, then on the strength of Davidson *v.* Moreland, 7 W. N. C., 12, her father's settlement at the time of her emancipation was irrevocably fixed as her settlement until she gained one in her own right. The first question then to be determined is, when is a child emancipated?

In Overseers of Washington *v.* Overseers of Beaver, 3 W. & S., 548; in Lewis *v.* Turbut, 3 Harris, 147; and in David-

son v. Moreland, 7 W. N. C., 12, it is held that a child becomes emancipated at the time he attains his majority. This is held to be true only when the child is of sound mind when he becomes of age. For the purpose, then, of determining whether or not Susanna Gray became emancipated at the time she was of age, it is necessary to determine whether or not she was of sound mind at that time.

But the court below was not asked to find whether or not the pauper gained a settlement in Fairfield township derivatively from her mother, and for that reason the facts upon which such a settlement is based were not found by the court with any degree of certainty.

Mr. Justice PAXSON delivered the opinion of the court, March 29th, 1886.

It is not denied that Joseph Gray, the father of the pauper, had a settlement in what is now the borough of Montoursville, in 1854. He rented a house there from Jacob Fry at $12 or $14 per annum, moved into it and resided there with his family for over one year and paid the rent. This fixes the legal settlement of Susanna Gray, his daughter, in Montoursville in 1854. Joseph Gray does not appear to have acquired a subsequent settlement elsewhere. He died about March 23d, 1869, at which time he was a pauper, and was buried at the expense of the overseers of the poor of Montoursville.

It is claimed, however, that Susanna Gray acquired a settlement in Fairfield township under the following circumstances, viz.: In 1861, Letitia Gray became the owner of a house and small lot of land in Fairfield township, in which she resided with her daughter Susanna until her death in 1882. It does not appear that Joseph Gray lived in this house with his wife and daughter during any portion of this time. It was claimed that the purchase of this house by Letitia Gray gave her husband a settlement in Fairfield; that it gave him an estate of freehold as tenant by the curtesy initiate; that her seizin was his seizin. If we concede this, it does not give Joseph Gray a settlement in Fairfield, for the plain reason that to gain a settlement, there must not only be a seizin of a freehold estate but a dwelling upon it for one whole year. No such residence by him was alleged or proved.

It may be conceded that upon the death of Joseph Gray in 1869, his widow, Letitia Gray, acquired a settlement in Fairfield by virtue of her ownership of and residence in the house in question. But did the daughter gain a settlement there also? The latter was born in 1845. Her settlement, under all the authorities, was that of her father until his death in 1869. The daughter was then 24 years of age, and at 21

[Overseers of Poor of Montoursville *v.* Overseers of Fairfield.]

years of age she became emancipated: Overseers of Washington *v.* Overseers of Beaver, 3 W. & S., 548; Lewis *v.* Turbut, 15 Pa. St. Rep., 145. This rule, however, is not held to be true where the child is of unsound mind upon arriving at majority. It is not denied that this pauper is now insane, but there is no finding by the court below of her insanity upon her arrival at age. The nearest approach to it is this: "Her mind became deranged about the time she came of age in 1866 or 1867." This finding is too uncertain for us to say that she was insane when she reached majority. It is evident from a careful examination of this record that the learned court below was not asked to hold that the pauper obtained a derivative settlement from her mother. No such point was put to the court, and the findings of fact show that no such thought was in the mind of the learned judge. Had appellants urged this point below the court would have found the facts relating thereto with certainty. This shows the necessity of adhering to the rule laid down in Lower Augusta *v.* Selinsgrove, 64 Pa. St. Rep., 166, that the court cannot review the judgment below on the merits, as on an appeal; and that we can notice only the decisions on such points of evidence or law as have been excepted to. No point was put to the court below which contained even a suggestion that the pauper had acquired a derivative settlement from the mother in Fairfield.

It was claimed, however, that the pauper gained a settlement in Fairfield by virtue of an assignment or deed from her mother for the house and lot referred to. Aside from the question that this deed was defaced or altered, and the name of Joseph Gray apparently substituted for that of his daughter, the deed was that of a *feme covert*, and her husband did not join therein. Such a paper under all the authorities is void, and passed no title to the grantee. It was attempted to sustain this paper by the allegation that Joseph Gray had deserted his wife, but of this there was no proof.

The proceedings are affirmed.